IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALEX ANIL GEORGE, | ) | NO. 8:20cv529 |
| | ) | |
| Plaintiff, | ) | |
| | ) | BRIEF IN SUPPORT OF |
| v. | ) | DEFENDANT BENJAMIN |
| | ) | M. BELMONT'S MOTION |
| BENJAMIN M. BELMONT, | ) | TO DISMISS |
| | ) | |
| Defendant. | ) | |

Respectfully prepared and submitted by:

Ronald F. Krause – 15980
Daniel L. Willis - 26639
Cassem, Tierney, Adams,
  Gotch & Douglas
9290 West Dodge Road, Suite 302
Omaha, Nebraska  68114-3320
(402) 390-0300 Phone
(402) 390-9676 Facsimile
rkrause@ctagd.com
dwillis@ctagd.com
Attorneys for Defendant

NATURE OF CASE

The plaintiff, Alex George, was previously married to Jeanie George. (Compl. p. 5, ¶ 18). In December of 2017, plaintiff sought a divorce from Ms. George. (Id. ¶ 21). Ms. George retained the defendant, Benjamin Belmont, to represent her and her interests as her attorney for those proceedings. (Id. ¶ 22). This current action stems from statements that defendant made in judicial proceedings while advocating for his client, Ms. George. See generally Pl.'s Compl. Plaintiff brought actions of fraud, fraudulent misrepresentation, negligent misrepresentation, and intentional infliction of emotional distress. (Compl. pp. 5-14, ¶¶ 18-49).

STATEMENT OF MATERIAL FACT

1.  The plaintiff was previously married to Jeanie George. (Compl. p. 5, ¶ 18).

2.  Plaintiff sought a divorce from Ms. George in December of 2017. (Id. ¶ 21.)

3.  Ms. George retained defendant to represent her as her attorney for the divorce proceedings. (Id. ¶ 22.)

4.  Plaintiff filed a complaint with this Court on December 28, 2020 alleging causes of action seeking to impose civil liability on the defendant for statements that defendant made during a bench trial of the divorce proceedings. (See generally Pl.'s Compl.)

5.  Each of plaintiff's claims stems from statements that defendant made in his capacity as an attorney for Ms. George in prior divorce proceedings, and they were made during a bench trial. (Compl. pp. 5-14, ¶¶ 18-49)

6.  Each of plaintiff's claims are claims for civil liability based upon statements that defendant made during judicial proceedings. (Id.)

1

7. Each of the statements that forms the basis of plaintiff's actions bore a relation to the divorce proceedings. (Id. pp. 5-6, ¶¶ 25-27; pp. 9-14, ¶¶ 35-49)

## LEGAL STANDARDS FOR DISMISSAL

Rule 12(b)(6) motions.  Defendant is allowed to file a motion before a pleading to assert by motion the defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Plaintiff cannot survive a Motion to Dismiss under Rule 12(b)(6) by pleading merely legal conclusions, labels, and naked assertions.  Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). A district court assumes all factual allegations in the complaint are true and makes all reasonable inferences in favor of the nonmoving party. Dormani v. Target Corp., 970 F.3d 910, 914 (8th Cir. 2020). Dismissal is proper when the four corners of the complaint demonstrate that the plaintiff failed to state a claim upon which relief may be granted. See id.

## LEGAL ARGUMENT:

**Plaintiff's Complaint Should be Dismissed for Failure to State a Claim Upon Which Relief May be Granted Because Attorneys are Absolutely Privileged from Civil Liability for Statements made in Judicial and Quasi-Judicial Proceedings**

### I.      The Absolute Immunity Doctrine

"Lawsuits filed against litigation lawyers by their clients' adversaries primarily seek vengeance." T. Leigh Anenson, *Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers*, 31 Pepperdine L. Rev. 915, 916 (2004). Nebraska, and forty-seven other states, recognize absolute immunity for lawyers involved in litigation. E.g., Kocontes v. McQuaid, 279 Neb. 335, 778 N.W.2d 410 (2010), *overruled on other grounds in* Doe v.

2

Bd. of Regents of Univ. of Neb., 280 Neb. 492, 788 N.W.2d 264 (2010); Anenson, supra, at 917.

Nebraska has adopted the rule formulated in the Restatement (Second) of Torts. McKinney v. Okoye, 282 Neb. 880, 884, 806 N.W.2d 571, 576 (2011). Under the Restatement, attorneys, among others, "may assert absolute privilege as an immunity from liability for defamation for publications made during judicial proceedings if the defamatory material has some relation to the proceedings." Id. The Restatement (Second) of Torts states it this way:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts § 586 (1977). This immunity applies even where the plaintiff can show malice or bad faith on the part of the lawyer, at least where the conduct complained of has some relation to the litigation. E.g., Fink v. Oshins, 49 P.3d 640, 643 (Nev. 2002) (stating the immunity applies even where the statements are made with "knowledge of their falsity and personal ill will toward the plaintiff").

Although the initial immunity applied only to protect against defamation lawsuits such as libel and slander, the recent trend to is to extend immunity from all civil liability whatsoever, regardless of the tort theory. See, e.g., Mem'l Drive Consultants, Inc. v. Ony, Inc., No. 96-CV-0702E(F), 1997 U.S. Dist. LEXIS 14413, at * 8 (W.D.N.Y. Sept. 3, 1997) (applying Massachusetts law) ("While the privilege is most often used as a defense to defamation claims that have been brought against an attorney, the privilege has been interpreted to be an absolute privilege that insulates attorneys from all forms of civil

3

liability."); Buckhannon v. U.S. West Comms., Inc., 928 P.2d 1331, 1334-35 (Colo. Ct. App. 1996) (explaining that the privilege barred suit "regardless of the tort theory"). This includes actions based on theories of fraud. E.g., Janklow v. Keller, 90 S.D. 322, 241 N.W.2d 364 (1976). As one court noted, this immunity would be useless to litigation attorneys if they could be subject to liability by simply allowing plaintiffs to use a theory other than slander or libel. Doe v. Nutter, McClennen, & Fish, 668 N.E.2d 1329, 1333 (Mass. App. Ct. 1996). Absolute immunity is needed "to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." Rockwood Bank v. Gaia, 170 F.3d 833, 838 (8th Cir. 1999) (quotations and citations omitted) (applying Missouri law). See also, e.g., DeCamp v. Douglas Cty. Franklin Grand Jury, 978 F.2d 1047, 1050 (8th Cir. 1992).

Nebraska appellate courts have had the opportunity to extend the privilege from libel and slander to immunity from suit for actions in medical malpractice, intentional infliction of emotional distress, and interference with a business expectancy. Kocentes v. McQuaid, 279 Neb. 335, 778 N.W.2d 410 (2010) (extending immunity to claims for interference with a business expectation); Drew v. Davidson, 12 Neb. App. 69, 667 N.W.2d 560 (2003) (extending immunity to claims for medical malpractice and intentional infliction of emotional distress).

There are two potential exceptions that exist to application of this immunity. States are divided about whether the immunity applies to claims of malicious prosecution, and, in fact, Nebraska has declined to extend the privilege in such cases. See Anenson, supra, at 928 n.75; see also McKinney v. Okoye, 282 Neb. 880, 806 N.W.2d 571 (2011) (overruling Cent. Ice Mach. Co. v. Cole, 2 Neb. App. 282, 509 N.W.2d 229 (1993)). A

second exception is that courts do not apply the exception to state or federal statutory causes of action. See Anenson, supra, at 928. See also, e.g., Buck's, Inc. v. Buc-ee's, Ltd., No. 8:08CV519, 2009 WL 1839007, at *8 (D. Neb. June 25, 2009) (declining, among other things, to extend the privilege to a claim under the Nebraska Uniform Deceptive Trade Practice Act).

Whether absolute immunity applies is necessarily a question of law for the trial court to determine. E.g., Brown v. Griesenauer, 970 F.2d 431, 434 (8th Cir. 1992) ("[W]hether defendants are entitled to absolute immunity from damages liability is solely a question of law."). See also Surace v. Wuliger, 495 N.E.2d 939, 944 (Ohio 1986). A motion to dismiss is proper, here, because the four corners of the complaint demonstrate that plaintiff failed to state a claim upon which relief may be granted. Additionally, not only did plaintiff fail to state a claim, it is clear from the allegations in the complaint that plaintiff is incapable of stating a cause of action at all in this context based on the factual allegations in plaintiff's complaint. Cf. Drew, 12 Neb. App. at 75-76, 667 N.W.2d at 566 (stating that it would be impossible for the plaintiff in that case to state a cause of action where allegations in plaintiff's complaint were based upon statements in defendant's affidavit).

## II.  Public Policy Supporting the Absolute Immunity Doctrine

The absolute immunity doctrine is supported by a number of public policies. For one, attorneys are required by the Code of Professional Responsibility to zealously advance the interests of their clients. Anenson, supra, at 920 (citing Surace, supra, at 944). It has even been said that the litigation privilege is designed to protect the advocacy system itself by "barring claims that would disrupt the litigation process or deter persons

engaged in that process from performing their respective functions . . . ." Anenson, supra, at 921. This is why the privilege extends beyond attorneys to all participants, and beyond defamation to almost all civil claims. See generally Anenson, supra (detailing how and why attorneys and others are immune from almost all civil liability for statements made in judicial proceedings related to those proceedings).

"Primarily, the privilege protects the rights of clients who 'should not be imperiled by subjecting their legal advisers to the constant fear of' lawsuits arising out of their conduct in the course of legal representation." Anenson, supra, at 922 (quoting Youmans v. Smith, 153 N.Y. 214, 220 (1897)). Additionally, litigation attorneys are especially prone to being vilified, along with their clients, by party opponents. Furthermore, they have an ethical obligation to "capitalize upon advantages and to attack the weaknesses" of their opponents on behalf of their clients. Anenson, supra, at 922 (citations omitted). Moreover, the attorney has a duty of undivided loyalty to the client, and this can be jeopardized by even the mere threat of a lawsuit. Id. at 923.

This leads to the second policy that underlies the privilege: it furthers access to justice by preserving access to the courts. Id. Allowing adversaries to file lawsuits against their opponents' attorneys could lead to conflicts of interest between the lawyer and the client. "If parties could file retaliatory lawsuits and cause the removal of their adversary's counsel on that basis, the judicial process would be compromised." Id. at 923-24.

A third rationale underlying absolute immunity is that plaintiffs in these actions have other remedies available to them. For example, they can file complaints for disciplinary proceedings through state and local bar associations, and courts can impose sanctions for egregious behavior. Id. at 925. These remedies sometimes result in greater

punishment than a civil action because they potentially subject attorneys to temporary or even permanent revocation of their licenses to practice law. Id. at 926.

The plaintiff complains of four separate causes of action: fraud (Compl. pp.9-10, ¶¶ 35-38), fraudulent misrepresentation (Id. pp. 10-11, ¶¶ 39-41), negligent misrepresentation (Id. pp. 11-13, ¶¶ 42-45), and intentional infliction of emotional distress (Id. pp. 13-14, ¶¶ 46-49). For the reasons discussed in greater detail below, each of these claims is barred by the absolute privilege that protects litigation attorneys from their clients' adversaries for statements the litigation attorneys make in judicial proceedings.

### III.    The Absolute Immunity Doctrine as Applied in Nebraska Prevents Each of Plaintiff's Four Causes of Action

Nebraska has followed the common law doctrine of absolute privilege for litigation attorneys from civil liability since at least 1920. See Simon v. London Guarantee & Acc. Co., 104 Neb. 524, 177 N.W.2d 824 (1920). Although Nebraska at first only applied the privilege to defamation claims, both the court of appeals and the supreme court have since applied the privilege to other tort claims as well. E.g., Kocentes v. McQuaid, 279 Neb. 335, 778 N.W.2d 410 (2010) (extending immunity to claims for interference with a business expectation); Drew v. Davidson, 12 Neb. App. 69, 667 N.W.2d 560 (2003) (extending immunity to claims for medical malpractice and intentional infliction of emotional distress). This follows the modern national trend of extending the immunity to claims beyond defamation. See Anenson, supra, at 927 ("While the absolute immunity from civil liability originated to protect attorneys from lawsuits for defamation, recent cases logically extend immunity to other claims as well."). In fact, some courts have gone as far as to say that the immunity applies to all civil liability, regardless of tort theory, including

7

fraud. See Buckhannon, supra (explaining that the privilege barred suit "regardless of the tort theory"); Janklow, supra (applying the privilege to bar claims of deceit); Nutter, McClennen & Fish, supra (explaining that the purpose of the privilege is undermined if attorneys are subject to liability for their statements under a theory alternative to defamation).

Although the privilege as adopted applies to attorneys for statements they make in judicial proceedings, the privilege has also been extended to non-lawyers for statements made in judicial proceedings. See, e.g., Drew, supra (applying the privilege to statements from a witness when the plaintiff filed an action for medical malpractice and intentional infliction of emotional distress caused by the doctor's statements in a previous proceeding).

In Drew, Gary Drew filed medical malpractice and intentional infliction of emotional distress claims against Thomas Davidson, M.D. Drew, 12 Neb. App. at 70, 667 N.W.2d at 562. Davidson prepared an Affidavit in connection with custody issues Drew and his wife were having. Id. Davidson made comments in the affidavit that addressed the mental health of Drew and his child, and Drew contended that those statements were outside his area of expertise and that he acted negligently in making those statements. Id. Drew made corrections to an initial complaint, ultimately bringing actions of medical malpractice and intentional infliction of emotional distress. Id. at 71, 667 N.W.2d at 563. Davidson filed a demurrer, and the district court dismissed the petition with prejudice. Id. at 71-72, 667 N.W.2d at 563. Drew appealed.

The Nebraska Court of Appeals affirmed, concluding that Davidson's statements were subject to absolute immunity, further concluding that "it would be impossible for

Drew to plead a cause of action." Id. at 75-76, 667 N.W.2d at 566. To reach its conclusion, the Drew court relied on national trends and decisions of other states. See id. at 73, 667 N.W.2d at 564. The Drew court relied upon Morley v. Gory, A.2d 762 (Pa. Super. 2002), and the Drew court quoted that case, saying: "statements by a party, a witness, *counsel*, or a judge cannot be the basis of a defamation action whether they occur in pleadings or in open court." Drew, 12 Neb. App. at 74, 667 N.W.2d at 565 (citing Morley, supra) (internal quotations omitted) (emphasis supplied). The Drew court quoted further: "*no action will lie* for words spoken or written in the course of giving evidence." Id. (emphasis supplied by the Drew court).

  The Drew court also relied upon Gustafson v. Mazer, 113 Wash. App. 770, 54 P.3d 743 (2002), where the Washington court found that "witnesses are immune from *all* claims arising out of all testimony." Drew, 12 Neb. App. at 74, 667 N.W.2d at 565 (emphasis supplied by the Drew court). Finally, the Drew court stated that "we find the above case law to be persuasive . . . ." Id. at 75, 667 N.W.2d at 565. The Drew court dismissed plaintiff's petition for medical malpractice and intentional infliction of emotion distress, concluding that it did not need to address whether plaintiff should have an opportunity to further plead because "it would be impossible for the plaintiff to plead a cause of action." Id. at 75-76, 667 N.W.2d at 566. While the facts in Drew involved a witness being sued for malpractice and intentional infliction of emotional distress, the Drew court's reasoning made it clear that statements made by a party, witness, *counsel*, or a judge cannot be the basis of *any* civil claim or action. See id. at 73-74, 564-65 (quoting cases from other jurisdictions).

9

Here, all of plaintiff's causes of actions are predicated upon statements that defendant made during a bench trial in a previous action where the plaintiff in this action was the adverse party of this defendant's client in the previous divorce proceedings. (Compl. p. 5, ¶¶ 18-22; pp. 5-6, ¶¶ 25-27; pp. 9-10, ¶¶ 36-37; pp. 12-13, ¶¶ 44-45; pp. 13-14, ¶¶ 46-49). Each of the statements that defendant made in the previous proceeding, and that the plaintiff here is alleging to be tortious, were relevant to the prior proceedings. Id. Additionally, the defendant is an attorney practicing in Nebraska. (Compl. p. 1, ¶ 3; pp. 3-4, ¶¶ 11-14; p. 4, ¶¶ 17). Defendant was actively engaged in his business as an attorney and zealously advocating for his client, plaintiff's ex-wife, at the time that he made the statements that are subject of the plaintiff's current complaint. Id. Finally, all statements of which plaintiff complains were made in open court, clearly a judicial proceeding. (Compl. pp. 5-6, ¶¶ 25-27; pp. 9-14, ¶¶ 35-49). In fact, plaintiff has attached the trial transcript for this Court to review to determine that the bases for plaintiff's complaint were statements made by the defendant attorney in a judicial proceeding while advocating for his client. (Compl., E. 1).

This is a question of law for this Court to determine. The national trend has been to extend the immunity to all claims for civil liability, with the exception of civil claims for malicious prosecution and for claims arising under state or federal statutes. Although one decision from the United States District Court for the District of Nebraska "found no evidence" that the State of Nebraska had applied the privilege outside of defamation claims, the context of that court's statement indicates that the court in that case was not made aware of Drew v. Davidson, discussed in detail above. See Buck's Inc. v. Buc-ee's, Ltd., No. 8:08CV519, 2009 WL 1839007, at *8 (D. Neb. June 25, 2009). Buck's Inc. is

further distinguishable because it involved a claim brought under a Nebraska statute, where courts are less willing to apply absolute immunity.

One of the reasons absolute immunity is so broadly applied, especially to suits against litigation attorneys by their clients' adversaries, is because the plaintiffs in these cases have other remedies available to them. For example, courts can impose sanctions pursuant to the rules of civil procedure and the court's contempt powers, and plaintiffs can file claims for disciplinary proceedings through state and local bar associations. See, e.g., Anenson, supra, at 925. In some cases, the consequences for these alternative remedies are more severe than a civil action for damages. For example, the penalty for an ethical violation subjects a litigator to a risk to their entire livelihood in the form of temporary or permanent license revocation. Anenson, supra, at 926.

Here, as the plaintiff notes in his complaint, the defendant had a professional obligation of candor toward the tribunal. (Neb. R. Prof. Cond. § 3-503.3; Compl. pp.7-8, ¶ 30). If plaintiff's allegations in his complaint are true, his remedy is through the counsel for discipline. In fact, plaintiff *did* file a disciplinary complaint, which was summarily rejected. Plaintiff's Complaint here is his last chance at vengeance against the defendant for representing plaintiff's ex-wife in their divorce proceedings; unfortunately for the plaintiff, these claims are barred by the absolute immunity doctrine that protects litigation attorneys from civil liability for statements they make in open court as part of their zealous advocacy of their clients.

## CONCLUSION

Plaintiff, an adversary of defendant's client in a previous proceeding, has complained of fraud, fraudulent misrepresentation, negligent misrepresentation, and

11

intentional infliction of emotional distress based upon statements that the defendant made as an attorney in open court while advocating zealously for his client's interests in the prior proceeding. For all the reasons stated above, defendant respectfully requests this Court enter an Order of Dismissal with Prejudice in this matter.

                               Respectfully submitted,

                               BENJAMIN M. BELMONT, Defendant.

                               By: /s/ Ronald F. Krause
                                   Ronald F. Krause – 15980
                                   Daniel L. Willis - 26639
                                   Cassem, Tierney, Adams,
                                      Gotch & Douglas
                                   9290 West Dodge Road, Suite 302
                                   Omaha, Nebraska 68114-3320
                                   (402) 390-0300 Phone
                                   (402) 390-9676 Facsimile
                                   rkrause@ctagd.com
                                   dwillis@ctagd.com
                                   Attorneys for Defendant

**Certification of Compliance Under NECiv.R. 7.1(d)**

      The undersigned hereby certifies that this BRIEF IN SUPPORT OF DEFENDANT GEORGE M. BELMONT'S MOTION TO DISMISS to which this certification is attached does not exceed the limits set forth in NECiv.R. 7.1(d)(A) of 13,000 words for a supporting brief. This Brief contains 3,557 words based upon the word count function within the Word component of Microsoft Office Home and Business 2019, with which the Brief was created before conversion to pdf form. This count includes all text, including the caption, headings, footnotes, and quotations.

                                               /s/ Ronald F. Krause

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alex A. George
2001 New Castle Circle
Plano, TX 75075
alexageorge85@gmail.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:
N/A

/s/ Ronald F. Krause_____