IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALEX ANIL GEORGE,<br><br>                    Plaintiff,<br><br>vs.<br><br>BENJAMIN M. BELMONT,<br><br>                    Defendant. | 8:20-CV-529<br><br>MEMORANDUM AND ORDER |

The plaintiff, Alex Anil George, sued defendant Benjamin Belmont for various tort claims arising out of Belmont's representation of George's ex-wife during their divorce proceedings. Filing 1. Because this case is not properly decided by a federal court, George's complaint will be dismissed.

## I. BACKGROUND

George is a citizen of Texas. Belmont is a citizen of Nebraska and an attorney practicing in Omaha, Nebraska. Filing 1 at 1. George married Jeanie George in Omaha in 2002. In 2015, George was diagnosed with pulmonary hypertension, a condition his doctor described as "disabling," and thereafter received a "handicap permit" from the DMV. In December 2017, George filed for divorce and Jeanie retained Belmont to represent her. George alleges that during discovery he provided Belmont with "evidence of his medical disability, collectibles, insurance settlements, and his assets." Filing 1 at 5.

The divorce proceeded to a 5-day bench trial before Judge Duane Dougherty in the District Court of Douglas County, Nebraska in the fall of 2019. *See* filing 1 at 5. According to George, during the trial Belmont (1) "falsely stated that [George] had been awarded $50,000.00 in an insurance settlement,"

(2) "falsely omitted at least $900,000.00 in collectibles never returned to [George]," which Belmont and Jeanie both claimed had been destroyed when the couple's basement flooded, and (3) adduced testimony and made false statements that George was not disabled. Filing 1 at 5-6. And George suggests that Belmont's actions induced Judge Dougherty to issue an erroneous divorce decree more favorable to Jeanie. *See* Filing 1 at 7-9. That is to say, George attempts to collaterally attack the divorce decree by claiming Belmont lied to the state district court in various ways.[1]

Attached to his complaint, George filed a full transcript of the divorce proceedings (filing 1-1); the final divorce decree, dated August 8, 2020 (filing 1-3 at 2-23); an order granting in part and denying in part George's motion to amend or alter the decree, dated September 8, 2020 (filing 1-3 at 24-26); and a letter from American Claims Management allegedly showing that George never received a $50,000 insurance settlement (filing 1-2), *see* filing 1 at 6. The divorce decree is particularly illuminating.

During the divorce proceedings, George claimed that he was disabled and had no income. So, Judge Dougherty awarded George temporary alimony and required him to apply for disability benefits. Filing 1-3 at 4. But it later became apparent to the court that George had lied. He had actually been running both a roofing and pest control business and had never applied for disability benefits. Filing 1-3 at 4-5. And his income and purported disability were not the only things George lied to the court about. *See* filing 1-3 at 8

---

[1]    When a judgment is attacked in a way other than by proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack. *Fetherkile v. Fetherkile*, 907 N.W.2d 275, 288 (Neb. 2018).

("[George's] claim that he paid off the bank "every penny" from money he received in a lawsuit was proved to be a pure fabrication.").

The Court has also reviewed the state court docket in this matter, and has filed the docket report as of May 17, 2021 as an attachment to this memorandum and order. *See generally George v. George*, No. CI 17-10515 (Dist. Ct. Douglas Cty., Neb.).[2] George has not appealed the divorce decree or Judge Dougherty's partial denial of his motion to amend or alter the decree. *See id*. But there is a pending complaint, filed by George, to modify the decree. Complaint-Modify (Jan. 21, 2021). And there's a pending motion for order to show cause why George should not be held in contempt for violating the decree, filed by Jeanie. Motion-Order to Show Cause (Feb. 17, 2021). George has also filed motions for Judge Dougherty to recuse himself and for Belmont and his law firm to be disqualified. Motion to Recuse (Mar. 29, 2021); Motion to Disqualify (Mar. 29, 2021).

One of the reasons George moves for Judge Dougherty's recusal is his alleged "bias and prejudice against [George] when [Dougherty] allowed [Belmont] to [falsely] argue in court that [George] had received $50,000.00 in proceeds from an insurance claim . . . ." Motion to Recuse at 1 (Mar. 29, 2021). In other words, Belmont's alleged fraud forms a partial basis for George's motion for recusal. *See id*. at 1-2.

George filed this lawsuit a few weeks before filing his application to modify in state court, invoking this Court's diversity jurisdiction, and alleged Belmont is liable for fraud, fraudulent misrepresentation, negligent misrepresentation, and intentional infliction of emotional distress. And George is seeking actual, compensatory, and punitive damages as well as costs. *See,*

---

[2]    The Court may take judicial notice of public court records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

*e.g.*, filing 1 at 10. His alleged damages are based, at least in part, on the property settlement ordered in the divorce decree. *See* filing 1 at 11. Belmont filed a motion to dismiss under Rule 12(b)(6) claiming that he has "absolute immunity" or "absolute privilege" from tort claims arising out of his representation of Jeanie during the divorce litigation. *See generally* filing 7.

## II. DISCUSSION

Although Belmont does not raise the issue, these circumstances require the Court to consider whether it should abstain from exercising its jurisdiction: the state court proceedings in George's divorce are still ongoing, Belmont still represents Jeanie in those ongoing proceedings, and George's allegations amount to a collateral attack on the divorce decree. The Court considers abstention *sua sponte*. *See Robinson v. City of Omaha*, 866 F.2d 1042, 1043 (8th Cir. 1989) (holding that abstention doctrines in general may be raised *sua sponte*); *see also Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 676 (8th Cir. 2013) (affirming dismissal where the district court abstained *sua sponte* under the *Younger* doctrine).

Federal courts are divested of the power to issue divorce, alimony, and child custody decrees under the "domestic relations exception." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). But that exception encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree, and may not be invoked to divest diversity jurisdiction over claims for other types of relief (e.g. contract, tort) brought by individuals who have been involved in domestic relations proceedings in state court. *Id.* So, it is clear that the Court has subject matter jurisdiction to hear George's claims, even though they arise from statements made by Belmont while representing Jeanie in a divorce trial.

*See Id.* But *Ankenbrandt* also established that abstention from such cases is appropriate in certain circumstances. *Id.* at 705-06. They are present here.

Abstention is a doctrine designed to promote federal-state comity and is required when a federal court decision would disrupt the establishment of coherent state policy. *Id.* at 704-05. Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Id.* at 705. And abstention rarely should be invoked because the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Id.*; *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976).

But abstention under *Younger v. Harris,* 401 U.S. 37 (1971) and its progeny may be appropriate where a state proceeding is ongoing or important state interests are at stake. *See Ankenbrandt*, 504 U.S. at 705; *Middlesex Cty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 602 (8th Cir. 1999); *Amerson v. Iowa*, 94 F.3d 510, 512 (8th Cir. 1996). In particular, *Younger* abstention is applicable where the state proceeding qualifies as (1) a criminal prosecution, (2) a civil enforcement proceeding that is akin to a criminal prosecution, or (3) a proceeding implicating a state's interest in enforcing the orders and judgments of its courts. *Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013); *Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 552 (8th Cir. 2018). And the Eighth Circuit has discussed *Ankenbrandt* and abstention in the context of cases adjacent to those barred by the domestic relations exception on several occasions. *See, e.g., Lannan v. Maul*, 979 F.2d 627 (8th Cir. 1992); *Kahn v. Kahn*, 21 F.3d 859 (8th Cir. 1994).

For instance, in *Lannan*, the Eighth Circuit considered a suit to enforce a property settlement agreement which required a father, since deceased, to maintain a life insurance policy naming his daughter as the sole beneficiary,

with a payout equal to the total child support due through his daughter's 19th birthday. 979 F.2d at 628-29. The *Lannan* court held that *Ankenbrandt* foreclosed application of the domestic relations exception because the suit was in essence a third-party beneficiary claim based on contract law, and did not "involve a domestic relations dispute between a feuding couple concerning a divorce, alimony, or child custody decree." 979 F.2d at 631. And the court also held that *Younger* abstention was inappropriate because the third-party beneficiary claim had no substantial relationship to any pending state proceeding because the only issue remaining in state court was whether social security payments could be credited toward the decedent's child support obligations. *Id.*

But in *Kahn*, the Eighth Circuit considered claims by an ex-wife against her ex-husband for breach of fiduciary duty, conversion, constructive fraud and fraud. 21 F.3d at 860. The plaintiff had lodged the same basic accusations during state court divorce proceedings where she claimed her ex-husband had procured loans with marital property and her separate property without her permission, misappropriated profits from the sale of her separate property, converted funds, and failed to render an accounting. *Id.* Her counsel in the divorce proceeding had requested the state court award her a "heavily disproportionate share of the marital property," which, after nine days of trial, the state court did. *See id.* The federal district court granted summary judgment to the ex-husband, finding res judicata barred the plaintiff's claims. *Id.* at 861. But the Eighth Circuit determined the domestic relations exception barred subject matter jurisdiction and dismissed the case. *Id.* at 861-62.

The *Kahn* court reasoned that the plaintiff's claims, "although drafted to sound in tort, [were] so inextricably intertwined with the prior property settlement incident to the divorce proceeding that subject matter jurisdiction

[did] not lie in the federal court. *Id.* at 861. The court explained that Missouri law required a state court to consider the conduct of the parties during marriage to determine alimony and the disposition of property. *See id.* Because the plaintiff had alleged the same wrongful marital conduct in her divorce proceedings as in her complaint in federal court, the Eighth Circuit determined the state court necessarily considered and decided those issues in crafting its divorce decree and property distribution. *Id.* at 861-62 n. 4. So, in order to resolve the plaintiff's tort claims, the federal district court would have to "inquire into matters directly relating to the marital relationship or the property settlement." *Id.* at 862.

Here, the facts are much closer to those in *Kahn*, and can be distinguished from those in *Lannan*. To begin, George is a party to pending state court proceedings where he seeks to modify the divorce decree that he claims resulted from Belmont's allegedly false statements. And the Court would be required to "inquire into matters directly relating to the marital relationship" or divorce decree to resolve George's tort claims, because they all rest on allegations that Belmont lied about George's disability and assets during the divorce trial. *See* filing 1 at 5-7. Admittedly, this case is different from *Kahn* because George is suing Belmont, his ex-wife's attorney, rather than his ex-wife directly. But that is a distinction without a difference, because George's damages are based solely on the state court issuing a divorce decree that George claims is erroneous. *See* filing 1 at 9-14. Finally, *Lannan* is distinguishable, because there is no contract in dispute, and George is not a third-party beneficiary. George is a party to the state court proceedings and seeks to collaterally attack the divorce decree, not enforce a separate contract.

It could be argued the Court does not have subject matter jurisdiction over George's claims based on *Kahn*. But the Court takes seriously its

"virtually unflagging obligation" to exercise the jurisdiction it's been given. *See Lannan*, 979 F.2d at 632. And the present case can be distinguished from the claims in *Kahn*, which were "so inextricably intertwined" with the divorce proceedings. Here, George sued Belmont and not his ex-wife. And Belmont was not a party to the divorce decree George is collaterally attacking. George also alleges several bases for his fraud claims—Belmont's alleged statements regarding George's disability, collectibles, and insurance settlement—not all of which were directly addressed by the state court. Judge Dougherty explicitly found George's claims of disability to be false, filing 1-3 at 4-5, but it is not as apparent whether Dougherty made findings of fact concerning the collectibles and insurance settlement, *see* filing 1-3 at 8, 10-12; filing 1-1 at 152-56, 562-64, 617-18, 672-82, 741-42. So, the Court finds at least colorable jurisdiction.

Nevertheless, this case presents a set of facts where *Younger* abstention is warranted. There are pending motions in state court, filed by both George and Jeanie, to modify and enforce the decree. George has also raised at least some of his fraud allegations in his motion to recuse Judge Dougherty.[3]

---

[3]      George also had other options. Nebraska law provides various remedies for dealing with alleged fraud in the procurement of a divorce decree. *See Fetherkile*, 907 N.W.2d at 288. First, a district court may vacate or modify its own judgments or orders under certain conditions, prescribed by statute, including "for fraud practiced by the successful party in obtaining the judgment or order." Neb. Rev. Stat. § 25-2001; *see Fetherkile*, 907 N.W.2d at 288. A party may also appeal a divorce decree, which is treated as a final order for purposes of appellate review as soon as it is entered. Neb. Rev. Stat. § 42-372.

But, while the Court need not and will not decide the issue, collaterally attacking a decree in the way George attempts here is likely barred by Nebraska law. When a judgment is attacked in a way other than by proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack. *Fetherkile*, 907 N.W.2d at 288. Even if erroneous, a judgment is not subject

- 8 -

Moreover, the state court necessarily considered and decided at least some of the issues before the Court—most obviously whether George is disabled. And to resolve George's tort claims, the Court would have to "inquire into matters directly relating to the marital relationship or [divorce decree]" because George's damages would derive from the purportedly erroneous decree caused by Belmont's allegedly tortious behavior. *See Kahn*, 21 F.3d at 862. Simply put, awarding George damages would be deliberately intended to undo the state court's property settlement based on factual findings necessarily contradicted by its decree. So, this is a proceeding both implicating a state's interest in enforcing the orders and judgments of its courts, and substantially related to a pending state proceeding, making *Younger* abstention appropriate. *See Peterson*, 899 F.3d at 552; *Lannan*, 979 F.2d at 631.

Given the Court's abstention, it need not address Belmont's arguments regarding absolute privilege, or George's arguments in response.[4] Accordingly,

IT IS ORDERED:

1.      This case is dismissed.

---

to collateral attack unless it is void, such as would be the case where a judgment is entered without jurisdiction over the person or subject matter. *Id.*

[4]      Belmont's absolute privilege argument also presents an unsettled question of state law, because Nebraska has not yet determined whether purely fraudulent statements made during judicial proceedings are subject to absolute privilege. *See Kocontes v. McQuaid*, 778 N.W.2d 410, 424-25 (Neb. 2010) (holding that the privilege applies equally to defamation as it does to other tortious behavior, so long as the injury pleaded stemmed from the allegedly defamatory statement). All the more reason this dispute should be resolved by a Nebraska state court. *See McKesson v. Doe*, 141 S.Ct. 48, 51 (2020).

2.      Belmont's motion to dismiss (filing 6) is denied as moot.


3.      A separate judgment will be entered.


Dated this 25th day of May, 2021.


                        BY THE COURT:


                        John M. Gerrard
                        Chief United States District Judge